UTZURRUM LAW OFFICES, A.P.C.
Joe Utzurrum, Esq.
Cal Bar Number 171701
11620 Wilshire Boulevard
Suite 900
Los Angeles, California 90025
Tele 310.887.1837
Email joe@ulawoffices.com

Attorneys for plaintiff, JOSEPH R. MEEHAN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH R. MEEHAN,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>PELLE TSICHLIS aka PELLE PRIMEAU,<br><br>　　　　Defendants, | Case No. 2:20-cv-09623-MWF-E<br><br>PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF JOSEPH R. MEEHAN<br><br>Judge: The Honorable Michael W. Fitzgerald<br>Location: First Street Courthouse<br>Courtroom: 5A<br><br>Complaint Filed: April 15, 2014<br>Hearing Date: 21 December 2020<br>Hearing Time: 10:00 a.m.<br>Hearing Room: 5A |

　　　Plaintiff, Joseph R. Meehan (**Meehan**), herein opposes defendant's, Pelle Tsichlis', motion to dismiss plaintiff's Complaint based on lack of personal jurisdiction, pursuant to Fed. R. Civ P. 7(b) and 12(b)(2).

　　　The opposition is based on this memorandum of points and authorities, the attached declaration of, Joseph R. Meehan, and the pleadings, including

the Compliant, the objections to evidence, the files and other matters that may be presented at any hearing set by the Clerk of Court.

Dated: November 30, 2020, Los Angeles, California

UTZURRUM LAW OFFICES, A.P.C.

By: _____/s/ Joe Utzurrum_____

Joe Utzurrum, Attorney for plaintiff, Joseph R. Meehan

## TABLE OF CONTENTS

**I. SUMMARY OF ARGUMENT** ........................................................................... 1

**II. FACTS** ............................................................................................................ 2

**III. SPECIFIC JURISDICTION** ........................................................................... 3

    A.  Defendant committed an intentional act ............................................... 4
    B.  Defendant expressly aimed his conduct at California ......................... 4
    C.  The tortious conduct occurred in California satisfying the first two prongs of the purposeful direction analysis. ................................. 7
    D.  Defendant caused harm that defendant knew would likely be suffered in the forum state .................................................................... 9
    E.  Exercise of jurisdiction is reasonable .................................................. 9

**IV. TRANSFER TO FEDERAL DISTRICT COURT IN ALLENTOWN PENNSYLVANIA** ............................................................................................... 11

**V. CONCLUSION** .............................................................................................. 11

## TABLE OF AUTHORITIES

**CASES**

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.* (9th Cir. 2017) 874 F.3d 1064 ........ 3
*Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995) .................................. 8
*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) ................................................................................... 7
*Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984) ..... 4
*Calder, supra* ................................................................................................. 7
*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1288 (9th Cir. 1977) ........................................................................................................... 8
*Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) ............... 3
*Freestream Aircraft, supra* ............................................................................ 7
*Freestream Aircraft, supra* at 607 ............................................................... 10
*Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1132 (9th Cir. 2003) ..................................................................................... 9
Int'l Shoe Co. v. Wash., 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945 ..................................................................................................................... 1
*International Shoe Co. v. Washington*, 326 U. S. 310, 316 (1945) ................ 7
*Kulko v.* ........................................................................................................ 7
*Paccar Int'l, Inc. v. Commercial Bank of Kuwait, S.A.K.*, 757 F.2d 1058, 1064 (9th Cir. 1985) .............................................................................................. 8
*Shaffer v. Heitner*, 433 U. S. 186, 204 (1977) ............................................... 7
*Shaffer v. Heitner, supra*, at 216 .................................................................. 7
*Walden v. Fiore* (2014) 571 U.S. 277 [134 S.Ct. 1115, 188 L.Ed.2d 12] ........ 4
*Wash. Shoe Co. v. A-Z Sporting Goods Inc.* (9th Cir. 2012) 704 F.3d 668 .... 4
Wash. Shoe Co. v. A-Z Sporting Goods Inc. (9th Cir. 2012) 704 F.3d 668, 674. ............................................................................................................. 4
*Washington Shoe*, 704 F.3d at 673 ................................................................ 4
*World-Wide Volkswagen Corp. v. Woodson*, 444 U. S. 286, 297-298 (1980). 7
*World-Wide Volkswagen Corp. v. Woodson, supra*, at 297 ........................... 7

**STATUTES**

Cal. Civ. Proc. Code § 410.10 ....................................................................... 3

UTZURRUM LAW OFFICES, A.P.C.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. SUMMARY OF ARGUMENT

The Constitution is a living document that should be interpreted logically consistent with the circumstances in which the people it is meant to govern exist and applied from the vantage point of pragmatism. The Internet and Social Media have made the world smaller and that each person is separated by six degrees now sounds like remote proposition. As such, what would offend "traditional notions of fair play and substantial justice" (Int'l Shoe Co. v. Wash., 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)) should not include a circumstance where accountability can be circumvented when the weapons of choice are the sword and shield of a keyboard and video camera used to hurl inflammatory and false statements at others who are known to be living on the other side of a state line.

Defendant urges the court to pigeonhole the instant case as one that merely involves a nonresident defendant who is alleged to have made defamatory statements on the Internet from 2,368 miles away in Pennsylvania about a California resident and nothing more. There is "more" here, however, because the statements made by defendant involved plaintiff and were directed at the state of California by affecting the commerce, taxes and residents of the intended forum state. Defendant words are a call to action to the State of California to shut down one of its viable business, Bar Wrestling, that plaintiff operated, and are a call to action to assist in the shutting down to other wrestling related businesses and persons, at least fifteen known by plaintiff, that either was a business based in California or that regularly conducted business in California. That the business are either based in California or regularly conducted business in California are not unsubstantiated facts, but rather facts personally known to plaintiff, because over his twenty year professional wrestling career, plaintiff has wrestled in,

and for, the California based and related business targeted by defendant as well has had personal and professional interactions with those persons.

## II. FACTS

Plaintiff has been an independent professional wrestler for the past twenty years and in doing so has travelled most of the United States many times over and destinations around the world. (Meehan Dec ¶7) His character "Joey Ryan" has gained widespread popularity, popularity that Plaintiff has worked diligently to promote. (Meehan Dec ¶¶5-13) Plaintiff has also been involved in wrestling promotions with his most current and most successful being Bar Wrestling that uses Southern California venues, including drinking establishments, i.e., "bars", to hold its wrestling shows. (Meehan Dec ¶11) Bar Wrestling secures venues and books professional wrestling talent that paid relatively small appearance fees, but are reimbursed for travel and boarding. (Meehan Dec ¶¶26-28)

Bar Wrestling is owned by Plaintiff and it is a successful venture having ran fifty-five shows at Southern California establishments from June 2017 to March 2020 and in that time period selling 17,076 tickets for a revenue of $396,561.00. (Meehan Dec ¶¶26-28)

Defendant is wrestler who lives in Pennsylvania and used his Twitter account to send a thirty-seven minute video disparaging Plaintiff and calling on over thirty persons to destroy Plaintiff's career as a professional wrestler and destroy Plaintiff's business, Bar Wrestling. (Comp. ¶113) In the video Defendant called out eight persons (including businesses) related to professional wrestling that are based in or connected to California to assist Defendant in his quest to destroy Plaintiff's only income stream and wrestling brand that Plaintiff has built over the last twenty years. (Meehan Dec ¶¶22-25) Defendant then attached a link of the video to five messages that were posted on Defendant's Twitter home Timeline that were directed to twelve persons (including businesses) related to professional wrestling that are

Opposition to Motion to Dismiss

2

based in or connected to California to assist Plaintiff in his quest to destroy Plaintiff. Last, Defendant sent eighteen messages through his Twitter account indicating that Defendant was in the process of ruining Plaintiff's life. (Meehan Dec ¶29-30) It must be noted that Defendant's Twitter home Timeline has been fully public at all times and all messages directed at the California professional community were public.

### III. SPECIFIC JURISDICTION

Axiom Foods, Inc. v. Acerchem Int'l, Inc. (9th Cir. 2017) 874 F.3d 1064, is a much cited case as to Ninth Circuit precedent relating to personal jurisdiction. *Axiom, supra*, was a copyright infringement claim involving a California corporation attempts to hale a Shanghai parent company and its United Kingdom (UK) subsidiary into a California Federal District Court based on emails sent by an employee of the UK subsidiary. The court cited California's long arm statute also applicable in the instant case at Cal. Civ. Proc. Code § 410.10, holding that "[California] state law and federal due process law are the same.) *Id.* at 1068. There two levels of analysis in determining whether a court may exercise specific jurisdiction[1] over a defendant, the first of which is to determine the existence of three elements,

> (1) the defendant must either "purposefully direct his activities" toward the forum or "purposefully avail[] himself of the privileges of conducting activities in the forum"; (2) "the claim must be one which arises out of or relates to the defendant's forum-related activities"; and (3) "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." Dole Food Co., Inc. v. Watts, 303 F.3d 1104, 1111 (9th Cir. 2002). *Axiom, supra* at 1068.

---

[1] Plaintiff is not claiming "general jurisdiction" since it cannot be established that defendant was engaged in continuous and systematic contact with California that approximate physical presence. *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.,* 223 F.3d 1082, 1086 (9th Cir. 2000)

Since, as here, the case involves claims based in tort, the "purposeful direction" test is appropriate, which is also often referred to as the "effects" test as directed by the Court in *Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984). *Washington Shoe*, 704 F.3d at 673. "The defendant must have '(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.' *Axiom*, *supra*, at 1069. The three-part test is the next (or first) level of analysis.

**A.     Defendant committed an intentional act**

The intentional act requirement was committed when Defendant typed in the characters to create the content on his Twitter account and not the intended consequences. (see *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 803, 806 (9th Cir. 2004).) "Accordingly, an intentional act is an external manifestation of the actor's intent to perform an actual, physical act in the real world, not including any of its actual or intended results." Wash. Shoe Co. v. A-Z Sporting Goods Inc. (9th Cir. 2012) 704 F.3d 668, 674.

**B.     Defendant expressly aimed his conduct at California**

In rejecting that specific jurisdiction existed with the UK subsidiary, the *Axiom* court focused on the lack of facts to establish the "expressly aiming" second prong and relied on Walden v. Fiore (2014) 571 U.S. 277 [134 S.Ct. 1115, 188 L.Ed.2d 12]. The Ninth Circuit rejected its prior holding Wash. Shoe Co. v. A-Z Sporting Goods Inc. (9th Cir. 2012) 704 F.3d 668 that "individualized targeting" was enough,

> In light of the Court's instructions in *Walden*, mere satisfaction of the test outlined in *Washington Shoe*, without more, is insufficient to comply with due process. Following *Walden*, we now hold that while a theory of individualized targeting may remain relevant to the minimum contacts inquiry, it will not, on its own, support the exercise of specific jurisdiction, absent

> compliance with what *Walden* requires. *Axiom*, *supra*, at 1070.

The Axiom court held that "The [*Walden*] Court made clear that we must look to the defendant's 'own contacts' with the forum, not to the defendant's knowledge of a plaintiff's connections to a forum. [*Walden*, *supra*,] at 1124-25." *Axiom*, *supra*, at 1070. The *Axiom* court then applied the principles set forth by the United States Supreme Court and concluded that because that it was not enough that fifty-five persons were alleged to have received the infringing newsletter by email, but in so doing concluded, "We lack information concerning the residence of the 55 recipients and the legal and operational relationships among the 55 recipients and their respective companies. Moreover, any California contacts Acerchem UK created by sending a single newsletter to 55 recipients of unknown residence are too "attenuated," [citing Walden at 1123.] *Axiom*, *supra,* at 1070. Apparently, the *Axiom* plaintiffs had a foundation problem as to the recipients of the emails. The Ninth Circuit continued, "It can hardly be said that "California [wa]s the focal point both of the [newsletter] and of the harm suffered." *Walden*, 134 S. Ct. at 1123" *Axiom*, *supra*, at 1070-1071.

In the instant case, the something "more" is present to justify specific jurisdiction. This was not just an attachment to a one-off email blast to a few hundred recipients of unknown origin intended to sell a widget by using someone else's logo. First of all, Defendant intended on, and did, contact persons who Defendant hoped would assist him in ending Plaintiff's business opportunities. However, the something more was established when Defendant directly solicited assistance from Southern California residents and businesses involved in the professional wrestling community. Defendant was also apparently intent on cutting off all commerce that was related to the sale of thousands of tickets for professional wrestling events in the future.

Opposition to Motion to Dismiss
5

This is not a proposition based on speculation. In less than two years, Plaintiff was successful in holding wrestling events that sold 17,076 tickets to spectators to events held by Bar Wrestling. These events were held in Southern California and involved a substantial number of persons to provide support services. (Meehan Dec ¶¶26-28.)

The something more was established when Defendant created a thirty-seven minute video and then sent links to the video to businesses located in Southern California in the wrestling community. Defendant had a specific target market for his communications. The intended recipients were not random. The video was Defendant's call to action to destroy Plaintiff's business, Bar Wrestling. Defendant's plea in the video was a call to affect California in a substantial manner, including affecting (1) the lives of its citizens who are spectators of independent professional wrestling; (2) the lives of its citizens who provide support services to the events held by Bar Wrestling; (3) California's tax revenue; and, *inter alia*, (4) California's entertainment industry. (Meehan Dec ¶¶17-25.) Defendant used his Twitter account to directly contact persons involved in California professional wrestling community using the "@" character. The video reached out directly to wrestler and promotors. The something more was established when Defendant plead for the involvement of California to destroy Plaintiff's reputation and Plaintiff's business.

The something more was established when Defendant sent a substantial number of messages using his Twitter account over the course of months to directly contact Plaintiff, and make Plaintiff aware of Defendant's conduct. These direct messages to Plaintiff occurred on at least eighteen different occasions. (Meehan Dec ¶¶29-30.)

The Supreme Court's language in its analysis in *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) is instructive, "[u]nder the

Opposition to Motion to Dismiss

6

circumstances, petitioners must 'reasonably anticipate being haled into court there' to answer for the truth of the statements made in their article. *World-Wide Volkswagen Corp. v. Woodson*, *supra*, at 297; *Kulko v. California Superior Court, supra*, at 97-98; *Shaffer v. Heitner, supra*, at 216. An individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California." (*emphasis added*.) *Id.* at 790. The Court cited seminal cases to express the underlying, and logical, inquiry in the personal jurisdiction analysis which is "can a person reasonably anticipate being haled into court in another forum with knowledge that the person he or she is inflicting intentional (not negligent) harm resides in that forum?" When *Calder*, *supra*, *International Shoe Co. v. Washington*, 326 U. S. 310, 316 (1945), *Shaffer v. Heitner*, 433 U. S. 186, 204 (1977), *World-Wide Volkswagen Corp. v. Woodson*, 444 U. S. 286, 297-298 (1980) and *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) were decided, what could be "reasonably anticipated" then was different from what could be "reasonably anticipated" in 2020. However, what is "reasonable" must move in step with technological advances. The world is smaller. Just as it is reasonable for a person in New York to anticipate that he or she can make damaging statements about another made on a website that is intimately connected to a business located a continent away, it is also reasonable that the person should anticipate that he or she cannot escape civil punishment for those statements by hiding behind that once physical barrier of the Colorado Rockies.

**C.    The tortious conduct occurred in California satisfying the first two prongs of the purposeful direction analysis.**

In *Freestream Aircraft v. Aero Law Group* 905 F.3d 597 (9th Cir. 2018), the defendant committed the tort of defamation in the forum state. The Ninth

Circuit held that the District Court analyzed the case erroneously under the "effects test" established in *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984)*,* "[g]enerally, '[t]he commission of an intentional tort in a state is a purposeful act that will satisfy the first two requirements [of the minimum contacts test].' *Paccar Int'l, Inc. v. Commercial Bank of Kuwait, S.A.K.*, 757 F.2d 1058, 1064 (9th Cir. 1985); see also *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995) ('[T]he `purposeful availment' requirement is satisfied if the defendant has taken deliberate action within the forum state. ...'). We applied that rule in *Paccar* and held that a non-Californian defendant could be sued in California for an allegedly fraudulent demand for payment made to a California entity. 757 F.2d at 1064. We found that '[t]he inducement of reliance in California [was] a sufficient act within California to satisfy the requirement of minimum contacts where the cause of action [arose] out of that inducement.' Id. (first alteration in original) (quoting *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1288 (9th Cir. 1977))." *Paccar.* at 603. Under *Paccar Int'l, Inc. v. Commercial Bank of Kuwait, S.A.K.,* 757 F.2d 1058, 1064 (9th Cir. 1985) because defamation was an intentional tort, "[t]he commission of an intentional tort in a state is a purposeful act that will satisfy the first two requirements [of the minimum contacts test]." *Id.* at 603

      Here the defamation, defamation-related claims and the claims related to whether defendant did interfere with Plaintiff's business, occurred in California because substantial proof of the elements of the torts are located in California, especially proof of the harm to Plaintiff's business and loss of reputation experienced by plaintiff. Whether or not Defendant's messages to California-based and California-interested persons actually were acted on by those persons lie entirely in California. As such, proof of Plaintiff's case lies

substantially in California and thus the torts claimed by plaintiff occurred in California satisfying the first two prongs of the purposeful direction analysis.

In addition, Defendant's forum related activities were Defendant's call to action to join him in destroying Plaintiff's reputation and business. The defamatory statements and the acts that constituted the tortious interferences were part of Defendant's invasion into California by making direct contact with persons and businesses related to the independent professional wrestling community in California.

### D. Defendant caused harm that defendant knew would likely be suffered in the forum state

Defendant was well aware that Plaintiff resided in California and ran Bar Wrestling in California. (Comp ¶111; Meehan Dec ¶¶22-23; Exhibit 6.) Defendant stated in Defendant's Video, "pay of one Joseph Ryan Meehan, out of Southern California". (Meehan Dec ¶23;Exhibit 6, p.11) and "You know, he just wants to do his work, do his shot and then get back on the plane right to SoCal" (Meehan Dec ¶23; Exhibit 6, p.11.) Defendant made multiple references to Plaintiff's promotion "Bar Wrestling" in the video and in messages posted on Twitter so that it cannot be controverted that the Defendant was fully aware that his conduct was intended to harm Plaintiff where he lived, i.e., in California.

### E. Exercise of jurisdiction is reasonable

Defendants have the burden of presenting a "compelling case that the presence of some other considerations would render jurisdiction [in Nevada] unreasonable." *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.,* 328 F.3d 1122, 1132 (9th Cir. 2003) (quoting *Burger King,* 471 U.S. at 477, 105 S.Ct. 2174); *see also Schwarzenegger,* 374 F.3d at 802. To evaluate reasonableness, we use a seven-factor balancing test that weighs: (1) the extent of the defendant's purposeful interjection into the forum state's

affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Paccar,* 757 F.2d at 1064-65." *Freestream Aircraft*, *supra* at 607.

Here, (1) the extent of the defendant's purposeful interjection by Defendant creating a thirty-seven minute video that falsely accuses the citizen and business of furthering sexually predatory conduct through the California business and then using his Twitter account to disseminate the video directly to California residents and business to conspire to destroy a California business into the forum state makes the interjection great; (2) the burden on the defendant of defending in the forum is small but would not constitute a deprivation of due process if defendant sustained financial burdens, because defendant has local counsel and video and phone conferencing are available for court appearances and depositions, eliminating/reducing travel expenses; (3) there is no conflict with the sovereignty of the defendants' state because it is the plaintiff's reputation and business in California that is being destroyed and must be protected (see Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 841 (9th Cir. 1986) ("sovereignty of a defendant's state is not a significant consideration in actions between citizens of the United States); (4) California's interest in adjudicating the dispute is of great importance because one of its citizens and businesses is being harmed, by outside foreign forces; (5) the most efficient judicial resolution of the controversy would be to adjudicate Plaintiff's claims in California since the evidence and witnesses relating to Plaintiff's damages are in California and the statements made are available online; (6)

there is great importance of the forum to the plaintiff's interest in rendering convenient and effective relief that would be best served by using the forum where most of the evidence lies; and (7) although there are alternative forums, efficiency would be promoted if the forum where most of the evidence and witnesses is found, i.e., California.

## IV. TRANSFER TO FEDERAL DISTRICT COURT IN ALLENTOWN PENNSYLVANIA

If the court grants defendant's motion to dismiss, Plaintiff requests that the case be transferred to the appropriate Federal District Court in Allentown, Pennsylvania where defendant is believed to reside and pursuant to 28 U.S.C. §1631 in the interest of justice.

## V. CONCLUSION

For the reasons stated above, plaintiff requests that the court consider the arguments herein and documents filed herewith and deny defendants motion to dismiss

Dated:  Los Angeles, California  30 November 30, 2020

UTZURRUM LAW OFFICES, A.P.C.


By: _____/s/ Joe Utzurrum_____
Attorney for Plaintiff, JOSEPH R. MEEHAN